IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| INFINITY COMPUTER PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 5: 18-cv-198-JMH-REW |
| | ) | |
| LEXMARK INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**LEXMARK INTERNATIONAL, INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT LIMITING
PLAINTIFF'S RECOVERY UNDER 35 U.S.C. §§ 252 AND 307(b)**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  PROCEDURAL BACKGROUND OF THIS CASE ...................................................... 2

III.  CONDUCT OF REEXAMINATION PROCEEDINGS .................................................. 3

IV.  LEXMARK'S STATEMENT OF UNDISPUTED FACTS ............................................ 4

    A.  Background on the Patents .......................................................................... 4

    B.  Background on the *Ex Parte* Reexamination Proceedings ..................................... 6

        1.  '811 Patent Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" and the Term "*Using an Unmodified Standard Protocol For*" to Distinguish the Claimed Invention from the Prior Art .............................. 7

        2.  '423 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art ........ 13

        3.  '574 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art ........ 15

        4.  '915 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art ........ 17

V.  SUMMARY JUDGMENT STANDARD ..................................................................... 19

VI.  A PATENTEE'S RECOVERY IS LIMITED UNDER 35 U.S.C. §§ 252 ¶¶ 1, 2 WHEN IT SUBSTANTIVELY AMENDS PATENT CLAIMS DURING REEXAMINATION 20

    A.  A Patentee's Potential Damages Are Limited Under § 252 ¶ 1 If the Reexamined Claims and the Original Claims are Not "Substantially Identical" ...................... 21

    B.  A Defendant May Continue Certain Activities Under § 252 ¶ 2 If the Reexamined Claim Was Not "In the Original Patent" ............................................................ 23

VII.  PLAINTIFF'S SUBSTANTIVE AMENDMENTS TO THE ASSERTED CLAIMS DURING REEXAMINATION LIMIT ITS POTENTIAL RECOVERY IN THIS CASE ...................................................................................................................... 23

    A.  Plaintiff Substantively Amended the Asserted Claims During Reexamination Proceedings to Narrow the Claims to Overcome the Prior Art ............................ 24

1.      Plaintiff's Addition of the Term "*Generic*" Substantively Narrowed the "Send/Receive Driver Communications Software" Limitation ............... 25

2.      Plaintiff's Addition of the Term "*Using an Unmodified Standard Protocol For*" Substantively Narrowed the "Shifting the Personal Computer" Limitation ............................................................................................. 27

B.      Because Plaintiff Substantively Amended the Asserted Claims, Plaintiff's Potential Recovery In this Case Is Limited ........................................................ 29

1.      Plaintiff is Not Entitled to Damages for the Time Period Before Issuance of the Reexamined Claims Under § 252 ¶ 1 ............................................. 29

2.      Lexmark is Entitled to Continue Certain Activities After Issuance of the Reexamined Claims Under § 252 ¶ 2, First Sentence ............................... 30

VIII.   CONCLUSION:  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN LEXMARK'S FAVOR ......................................................................................... 31

iii

# TABLE OF AUTHORITIES

**Cases**

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) ................ 30, 31

*Dura Global Techs., LLC v. Magna Int'l Inc.*, No. 11-cv-10551, 2011 WL 5039883 (E.D. Mich. Oct. 24, 2011) ................................................................................................................ 3

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) ............................................. passim

*Liebel-Flarsheim Co v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) .................................. 26, 28

*Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021 (Fed. Cir. 2015) ................................. 24

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 24, 25

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369 (Fed. Cir. 2017) ........ 21

*R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346 (Fed. Cir. 2015) ..................................... 21

*Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001) ............................................................. 30

*Sonos, Inc. v. D & M Holdings Inc.*, No. 14-1330, 2017 WL 6065126 (D. Del. Dec. 7, 2017) .. 23, 31

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) .................................................. 25

**Statutes**

35 U.S.C. § 252 ........................................................................................................................ passim

35 U.S.C. § 304 ................................................................................................................................ 3

35 U.S.C. § 305 ................................................................................................................................ 3

35 U.S.C. § 307 ........................................................................................................................... 1, 4

**Other Authorities**

H.R. Rep. No. 1307, 96th Cong., 2d Sess. 8, reprinted in 1980 U. S. Code Cong. & Admin. News 6460, 6467 ............................................................................................................................ 21

iv

**Rules**

Rule 56, Fed. R. Civ. P. .................................................................................................................... 4

## I.   INTRODUCTION

This is a patent infringement case brought by Plaintiff Infinity Computer Products, Inc. ("Plaintiff") against Defendant Lexmark International, Inc. ("Lexmark").  Lexmark denies infringement and denies the validity of the patents.  The issue presented in this Motion is a question of law:  Even assuming *arguendo* Plaintiff proves infringement of a valid claim, which it cannot, the damages Plaintiff seeks are limited, as a matter of law, under 35 U.S.C. §§ 252, 307(b) because Plaintiff substantively amended the patent claims during *ex parte* reexamination in the U.S. Patent and Trademark Office ("PTO").

There are four patents at issue in this case:  U.S. Patent Nos. 6,894,811 ("the '811 Patent"); 7,489,423 ("the '423 Patent"); 8,040,574 ("the '574 Patent"); and 8,294,915 ("the '915 Patent") (collectively, the "Patents").  Every Patent was the subject of *ex parte* reexamination proceedings in the PTO.  During reexamination, the patent examiner initially rejected every claim of the Patents in view of prior art that was not before the PTO during the initial applications for the Patents.  In response, Plaintiff had the option of narrowing the Patents' claims to differentiate them from the prior art, or face the PTO's cancellation of every claim.  Plaintiff chose to substantively amend the claims to overcome the prior art and gain allowance of the Patents.

The patent statute imposes limitations on the damages recoverable by a patentee in an infringement action when it substantively amends patent claims during reexamination, as Plaintiff did here.  35 U.S.C. §§ 252, 307(b).  One of the limitations prevents a patentee from recovering infringement damages for the time period before issuance of the reexamination certificate.  § 252 ¶ 1.  Another limitation prevents a patentee from recovering damages for certain otherwise infringing activities occurring after issuance of the reexamination certificate if

1

the activities pertain to products made, purchased, offered for sale, used, or imported before

issuance of the reexamination certificate.  § 252 ¶ 2, first sentence.

Accordingly, pursuant to Rule 56, Fed. R. Civ. P., Lexmark respectfully moves for partial

summary judgment that Plaintiff's potential recovery for damages for alleged infringement is

limited.  Specifically, Lexmark respectfully requests that the Court enter judgment that: (1)

Plaintiff is not entitled to damages for the time period before issuance of the Patents'

reexamination certificates under § 252 ¶ 1; and (2) Lexmark is entitled to continue the use of, to

offer to sell, or to sell to others to be used, offered for sale, or sold, the specific things made

purchased, offered for sale, used, or imported before issuance of the reexamined claims under §

252 ¶ 2, first sentence.

## II.   PROCEDURAL BACKGROUND OF THIS CASE

On June 30, 2010, Plaintiff filed suit in the U.S. District for the Eastern District of

Pennsylvania against fifteen defendants, including Lexmark, alleging patent infringement of the

'811 Patent and the '423 Patent.  (ECF No. 1 in 2:10-cv-03175, E.D. Pa.)  The litigation was

stayed pending the outcome of *ex parte* reexamination proceedings of the two patents by the

PTO.  (ECF No. 238 in 2:10-cv-03175, E.D. Pa.)

After conclusion of the reexamination proceedings, the Pennsylvania court found that the

fifteen defendants were not properly joined and severed the defendants.  (ECF No. 280 in 2:10-

cv-03175, E.D. Pa.)  Plaintiff later filed severed complaints against the defendants in December

2012, adding two additional patents, the '574 Patent and the '915 Patent.  (ECF No. 1 in 2:12-cv-

06799, E.D. Pa.)  The litigation was again stayed pending the outcome of *ex parte* reexamination

proceedings.  (ECF No. 29 in 2:12-cv-06799, E.D. Pa.)

2

The PTO concluded reexamination proceedings in October 2016.  The stays were lifted in August 2017.  (ECF No. 55 in 2:12-cv-06799, E.D. Pa.)  On January 16, 2018, Lexmark moved to transfer the case as to it to this District.  (ECF No. 71 in 2:12-cv-06799, E.D. Pa.)  The Pennsylvania court granted Lexmark's motion to transfer the case to this Court on February 23, 2018.  (ECF No. 82 in 2:12-cv-06799, E.D. Pa.)  This Court's Scheduling Order states that any "motions based on the doctrine of absolute intervening rights shall be filed on or before April 13, 2018."  (ECF No. 96.)

## III.    CONDUCT OF REEXAMINATION PROCEEDINGS

The patent laws permit the PTO to reconsider the validity of claims in a U.S. Patent through *ex parte* reexamination, among other available procedures.  *See, e.g.*, 35 U.S.C. §§ 301–307.  If the PTO institutes *ex parte* reexamination, and after any opening statements from the patent owner, the reexamination proceeding is conducted in a manner similar to the initial examination of an application for patent.  §§ 304, 305.  The PTO and the patent owner "correspond back and forth regarding the patentability of the claims, in light of the prior art at issue in the reexamination proceeding, in the form of 'office actions' and 'responses.'"  *Dura Global Techs., LLC v. Magna Int'l Inc.*, No. 11-cv-10551, 2011 WL 5039883, at *3 (E.D. Mich. Oct. 24, 2011) (citing § 305).

The patent owner may cancel claims, or add new claims or amend existing claims to distinguish the claimed invention from the prior art.  *Id.* (citing § 305).  That said, "[n]o proposed amended or new claim enlarging the scope of a claim of the patent" is permitted in a reexamination proceeding.  § 305.  At the conclusion of the reexamination proceeding, including any appeal, the PTO will issue a reexamination certificate canceling any claim found to be

unpatentable, confirming any claim found to be patentable, and incorporating any proposed

amended or new claim found to be patentable.  35 U.S.C. § 307.

## IV.     LEXMARK'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Rule 56, Fed. R. Civ. P., Lexmark asserts that the following facts cannot be

genuinely disputed.

### A.     Background on the Patents

1.     The Patents are part of the same patent family and share the same specification.[1]

(*See* Haugh Decl., Ex. A, '811 Patent; Ex. B, '423 Patent; Ex. C, '574 Patent; Ex. D, 915 Patent.)

2.     The Patents generally disclose "interfacing a conventional facsimile machine with

a PC enabling the use of the facsimile machine as a scanner or printer."  (Haugh Decl., Ex. A,

Abstract '811 Patent.)

3.     The Patents state that one of the objectives of the "present invention" is "to

provide a circuit for interfacing a PC and a facsimile to enable the facsimile to be utilized as a

scanner or a printer for a PC . . . ."  (Ex. A at 1:39–40, *i.e.*, column 1, lines 39–40.)

4.     The Patents also state that the "present invention" achieves "other objectives," in

addition to the objective set forth in paragraph 3 above.  (*Id.* at 1:48–50.)

5.      Figures 2a through 2h of the Patents show different embodiments of the "present

invention."  (*Id.* at 5:64–65 ("FIGS. 2a-2h show various arrangements in which the present

invention may be utilized."); *see also id.* at 2:36–39 ("FIGS. 2a–2i show simplified block

diagrams of various system arrangements employing the circuitry of the present invention.").)

---

[1]  Because the Patents share the same specification, and for convenience and simplicity, citations
to the specification herein are to U.S. Patent No. 6,894,811 B1.  (Haugh Decl., Ex. A.)

6.      One of the limitations of the claimed invention at issue in this Motion relates to "send/receive communications software."  (*See* Section VIII below.)

7.      The Patents' specification discusses the term "send/receive communications software" in connection with Figure 2g of the Patents, which is one of the various embodiments of the "present invention" provided in the Patents.  *See* Illustration 1 below.  (Haugh Decl., Ex. A at 8:4–26.)

**Illustration 1:  Figure 2g of the Patents**



Fig. 2g

8.      Describing Figure 2g, the specification expressly states that "*Any available send/receive communications software package is acceptable.*"  *See* Illustration 2 below.  (*Id.* at 8:24–26 (emphases added).)

**Illustration 2:  Excerpt of the Patents' Specification Discussing Figure 2g**

> 15   A send and receive driver software package then imple-
> ments the following action. The receive driver software
> accepts the digital image for storage or processing as appro-
> priate. This send/receive driver communications software
> package also has the ability to send a digital image to the
> facsimile machine for printing purposes. The facsimile
> 20   machine's control/modem circuitry then processed by the
> print driver 77 for printing. This linkage method for scan-
> ning and printing utilizing a fax machine is particularly
> useful for a computer without a fax modem. Any available
> send/receive communications software package is accept-
> 25   able.

5

(Haugh Decl., Ex. A at 8:24–26 (emphases added).)

9.      The drawing of Figure 2g discloses that that the "send/receive communication software" may also include "generic send/receive communication software."  (*See id.* at Fig. 2g.)

10.     The only time the word "generic" appears in the Patents' specification or drawings is in Figure 2g—one embodiment of many in the Patents.  (*See id.* at Fig. 2g.)

11.     The word "generic" does not appear anywhere in the written description of the Patents.  (*See generally* Haugh Decl., Ex. A.)

12.     The phrase "unmodified standard protocol" does not appear anywhere in the written description of the Patents.  (*See generally id.*)

**B.      Background on the *Ex Parte* Reexamination Proceedings**

13.     The PTO conducted *ex parte* reexamination of all four of the Patents.  (*See* Haugh Decl., Ex. E, Excerpts of '811 Reexamination; Ex. F, Excerpts of '423 Reexam; Ex. G, Excerpts of '574 Reexam; Ex. H, Excerpts of '915 Reexam.)

14.     Two groups of patent claims were amended by Plaintiff during reexamination. (*See, e.g.*, Reexamination Certificates in Exs. A–D to Haugh Decl.)

15.     The first group of patent claims was amended to add the term "*generic*" before the term "send/receive driver communications software" (or an equivalent term, *e.g.*, "send and receive driver communications software").[2]  (*See* Haugh Decl., Exs. A–D.)  This first group of patent claims consists of the following:

- reexamined claims 1-6 and 18-20 of the '811 Patent;

- reexamined claims 1-6 of the '423 Patent;

------

[2] For ease of reference, throughout this Section Lexmark indicates in italics new claim language added, or attempted to by added, by Plaintiff via amendment during reexamination.

6

- reexamined claims 1-8 of the '574 Patent; and

- reexamined claims 1-4, 6-12, 14, and 15 of the '915 Patent.

(*Id.*)

16. The second group of patent claims was amended to add the term "*using an unmodified standard protocol for*" before the term "shifting the personal computer to a connected mode  . . . ."  (*See* Haugh Decl., Ex. A.)  This second group of patent claims consists of the following:

- reexamined claims 7–17 of the '811 Patent.[3]

(*Id.*)

17. A summary of the reexamination proceedings for each Patent is discussed in the following sections.

    **1.**    **'811 Patent Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" and the Term "*Using an Unmodified Standard Protocol For*" to Distinguish the Claimed Invention from the Prior Art**

18. During reexamination of the '811 Patent, the Examiner initially rejected all of the original claims (claims 1–20) as unpatentable over the prior art.  (Haugh Decl., Ex. E at 14, September 21, 2011, Office Action.)

19. All of the Examiner's rejections identified U.S. Patent No. 5,390,031 to Kang (hereafter "Kang") as the primary prior art reference.  (*Id.* at 19-22.)

20. In response to the rejections, the Examiner and Plaintiff held an interview to discuss the cited references, including Kang.  In the written summary of the interview, the Examiner stated:  "The differences between Kang and the invention were discussed, but in the

_____

[3] In other words, only the '811 Patent involves both the first group and second group of claims. The other three patents involve only the first group of claims.

7

Examiner's view, the claims do not differentiate from Kang's disclosure." *See* Illustration 3

below.  (*Id.* at 27, November 16, 2011, Examiner Interview Summary.)

**Illustration 3:  Excerpt of Interview Summary**

Discussed claim interpretation issues, such as the meaning of "passive link" and "digital facsimile signals." It was argued that Kang does not disclose the claimed "passive link" putatively because the conventional facsimile image data generated by Kang's fax machine is modified by the computer interface unit 50 to include control information, as shown in figure 3 of Kang. It was also argued that Kang's fax machine does not output or transmit conventional digital facsimile signals, such as signals in a standard CCITT format, due to the addition of the control information to the signals. The differences between Kang and the invention were discussed, but in the Examiner's view, the claims do not differentiate from Kang's disclosure. However, it was tentatively agreed that Kang adds control information to standard fax signals and does not teach or suggest transmitting unmodified digital fax signals in a standardized format. Patent Owner's formal response to the previous Office action is forthcoming.

21.    Plaintiff subsequently amended every claim of the '811 Patent.[4]  (*Id.* at 31-34,

November 21, 2011, Response to Office Action.)

22.    Plaintiff amended claims 1–6 and 18–20 to add the term "*unmodified standard

protocol*" before the limitation "send/receive driver communications software."  (*Id.* at 29-31,

33-34.)

23.    Plaintiff amended claims 7–17 (the remaining claims) to add the term "*using an

unmodified standard protocol for*" before the limitation "shifting the personal computer to a

connected mode."  (*Id.* at 30-32.)

24.    Plaintiff argued that the amended claims were now patentable over Kang because

"Kang teaches a non-standard communications protocol and associated control codes that would

not be capable of transmission or reception by '*unmodified standard protocol* send/receive driver

communications software,' *as now recited in all of the claims of the instant patent*."  *See*

Illustration 4 below.  (*Id.* at 36 (emphasis added).)

_____

[4] A dependent claim includes all of the features of the independent claim to which it refers, plus
the additional limitations recited in the dependent claim.  37 C.F.R § 1.75.  Thus, amendment of
an independent claim is also incorporated into a dependent claim.

**Illustration 4:  Excerpt of Plaintiff's Response to Office Action**

facsimile machine.  However, as will be described below, Kang teaches a non-standard communications protocol and associated control codes that would not be capable of transmission or reception by "unmodified standard protocol send/receive driver communications software," as now recited in all of the claims of the instant patent.

25.     Another office action from the Examiner followed.  (*Id.* at 42-54, February 10, 2012, Office Action.)

26.     With respect to claims 7–17, the Examiner indicated that the claims were made allowable by Plaintiff's addition of the term "*using an unmodified standard protocol for.*"  (*Id.* at 51.)  The Examiner explained that these amendments differentiated the claims from Kang because "Kang uses a *modified* standard protocol for shifting a computer . . . ."  (*Id.* at 49 (emphasis added).)

27.     With respect to claims 1–6 and 18–20, the Examiner acknowledged that, although Plaintiff's amendments differentiated the claimed invention from Kang, Plaintiff's addition of the phrase "*unmodified standard protocol,*" as used in those claims, was not supported by the specification.  (Ex. at 50-51.)

28.     However, the Examiner suggested an amendment to claims 1–6 and 18–20 that would differentiate the claimed invention from Kang and overcome the written description rejection.  (Ex. at 51.)

29.     Specifically, discussing Figure 2g and the "send/receive driver communications software" limitation, the Examiner found that "image data is transferred between the computer and the fax machine using '*any available*' send/receive driver communications software package *or* a '*generic*' send/receive driver communications software package."  (*Id.* at 46 (emphasis added).)

30.     In other words, the Examiner found that the specification "teaches the send/receive driver communications software as being 'any available' or 'generic,' as opposed to 'unmodified standard protocol.'  *See* Illustration 5 below.  (*Id.* at 47.)

### Illustration 5:  Excerpt of Office Action

> Accordingly, the specification of the '811 patent teaches the send/receive driver communications software as being "any available" or "generic," as opposed to "unmodified standard protocol."

31.     On the other hand, the Examiner found that Kang's send/receive driver communications software is only considered "available;" it is not considered "generic" because it is "*specifically tailored* to the transmission and receipt of image data between a fax machine and a computer and would be unsuitable for generalized data transfer purposes, such as transmitting non-image data not intended for a fax machine."  (*Id.* at 47-48 (emphasis added).)

32.     Accordingly, the Examiner stated that claims 1–6 and 18–20 would be allowable if amended to indicate that the send/receive driver communications software is "*generic*" rather than "unmodified standard protocol" or if "otherwise amended to overcome" the written description rejection of § 112 "and to patentably distinguish the claims" from the prior art, including Kang.  *See* Illustration 6 below.  (*Id.* at 51.)

### Illustration 6:  Excerpt of Office Action

> 6.     Claims 1-6 and 18-20 would be allowable if amended to indicate that the send/receive driver communications software is "generic" rather than "unmodified standard protocol" or if otherwise amended to overcome the § 112, 1st paragraph, rejections and to patentably distinguish the claims from Kang and Kochis.

10

33.     Plaintiff accordingly amended claims 1–6 and 18–20 to replace the term

"unmodified standard protocol" with the term "*generic*" as suggested by the Examiner.  (*Id.* at

55-64, February 21, 2012, Amendment.)

34.     Plaintiff's addition of the term "*generic*" to claims 1–6, 18, and 20 overcame the

prior art (*i.e.*, Kang) rejection and the written description rejection.  (*Id.* at 65-68, March 12,

2012, Advisory Action.)

35.     However, as to claim 19, the Examiner required more explanation as to how the

addition of "*generic*" differentiated the claim from the prior art.  (*Id.* at 68.)   The Examiner

explained that "equipping the computer with the generic software such that the generic software

is enabled to receive scanned image signals from a fax machine and/or to send computer data to

the fax machine *is necessary for overcoming the prior art (such as in claims 1, 6, 18, and 20.)*"

(*Id.* (emphasis added).)

36.     Plaintiff further amended claim 19 to add "*wherein the computer is equipped with

generic send/receive driver communication software to send the digital image signals to the

facsimile machine for printing.*"  (*Id.* at 75, March 29, 2012, Supplemental Amendment.)

37.     The PTO issued a reexamination certificate for the '811 Patent on July 31, 2012.

(Haugh Decl., Ex. A.)

38.     As a result of reexamination, representative claim 1 of the '811 Patent now reads

as follows:

> 1. A method of creating a scanning capability from a facsimile
> machine to a computer, with scanned image digital data signals
> transmitted through a bi-directional direct connection via a passive
> link between the facsimile machine and the computer, comprising
> the steps of:
>
> by-passing or isolating the facsimile machine and the computer
> from the public network telephone line;

11

coupling the facsimile machine to the computer;

conditioning the computer to receive digital facsimile signals representing data on a scanned document; and

conditioning the facsimile machine to transmit digital signals representing data on a scanned document to the computer, said computer being equipped with *generic* send/receive driver communications software enabling the reception of scanned image signals from the facsimile machine, said transmitted digital facsimile signals being received directly into the computer through the bi-directional direct connection via the passive link, thereafter, said computer processing the received digital facsimile signals of the scanned document as needed.

(*Id.* at '811 Patent C1, Claim 1.)[5]

39.     As a result of reexamination, representative claim 7 of the '811 Patent now reads

as follows:

7. A method of making a facsimile machine operable as a scanner and printer for a personal computer, by transferring digital data through a bi-directional direct connection via a passive link between the facsimile machine and the computer, each of the facsimile machine and personal computer for communicating normally using at least one public network telephone line, comprising the steps of:

configuring the facsimile machine to communicate with the personal computer using a digital connector port of the facsimile machine and personal computer, with both the facsimile machine and personal computer isolated from said at least one public network telephone line;

arranging the facsimile machine to be in a digital connection mode; and

_____

[5] The PTO also issued Certificates of Correction for the '811 Patent that correct mistakes (*e.g.*, typographical errors) made by the PTO in the issuance of the patent.  The Certificates of Correction are included with Exhibit A.  *See* 37 CFR 1.322 ("The Director may issue a certificate of correction pursuant to 35 U.S.C. 254 to correct a mistake in a patent, incurred through the fault of the Office . . . .").

> *using an unmodified standard protocol for* shifting the personal
> computer to a connected mode for sending or receiving digital
> signals through the bi-directional direct connection via the passive
> link for scanning and printing between the computer and the
> facsimile machine, in a facsimile format, using the digital
> connector port of the personal computer, said computer being
> equipped with send/receive driver communications software
> enabling the transfer of the scanning and printing signals between
> the computer and the facsimile machine.

(*Id.* at '811 Patent C1, Claim 7.)

### 2. '423 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art

40.     Reexamination of the '423 Patent proceeded in parallel with reexamination of the

'811 Patent, following a similar sequence of events as discussed in Section IV.B.1. above with

respect to the addition of the term "*generic*."  However, for the sake of completeness, the

reexamination proceeding for the '423 Patent is set forth in the following paragraphs.

41.     During reexamination of the '423 Patent, the Examiner initially rejected all of the

original claims (claims 1-6) as unpatentable over the prior art.  (Haugh Decl., Ex. F at 15, 18-19,

September 21, 2011, Office Action.)

42.     All of the Examiner's rejections again identified Kang as the primary prior art

reference.  (*Id.*)

43.     As with the '811 Patent, in response to the rejections, the Examiner and Plaintiff

held an interview to discuss the cited references, including Kang.  In the written summary of the

interview, the Examiner stated:  "The differences between Kang and the invention were

discussed, but in the Examiner's view, the claims do not differentiate from Kang's disclosure."

*See* Illustration 7 below.  (*Id.* at 26, November 16, 2011, Examiner Interview Summary.)

13

**Illustration 7:  Excerpt of Interview Summary**

Discussed claim interpretation issues, such as the meaning of "passive link" and "digital facsimile (image) signals." It was argued that Kang does not disclose the claimed "passive link" putatively because the conventional facsimile image data generated by Kang's fax machine is modified by the computer interface unit 50 to include control information, as shown in figure 3 of Kang. It was also argued that Kang's fax machine does not output or transmit conventional digital facsimile signals, such as signals in a standard CCITT format, due to the addition of the control information to the signals. The differences between Kang and the invention were discussed, but in the Examiner's view, the claims do not differentiate from Kang's disclosure. However, it was tentatively agreed that Kang adds control information to standard fax signals and does not teach or suggest transmitting unmodified digital fax signals in a standardized format. Patent Owner's formal response to the previous Office action is forthcoming.

44.     Plaintiff subsequently amended every claim of the '423 Patent to add the term "*unmodified standard protocol*" before the limitation "send/receive driver communications software" (or analogous limitation).  (*Id.* at 31, November 21, 2011, Amendment.)

45.     As with the '811 Patent, Plaintiff again argued that the amended claims were patentable over Kang.  *See* Illustration 8 below.  (*Id.* at 32, November 21, 2011, Response to Office Action (emphasis added).)

**Illustration 8:  Excerpt of Plaintiff's Response to Office Action**

communicate using the standard protocol of the facsimile machine.  However, as will be described below, Kang teaches a non-standard protocol and associated control codes that would not be capable of transmission or reception by "unmodified standard protocol send/receive driver communications software," as now recited in all of the claims of the instant patent.

46.     Another office action from the Examiner followed.  (*Id.* at 36-47, February 10, 2012, Office Action.)

47.     The Examiner acknowledged that, although Plaintiff's amendments differentiated the claimed invention from Kang, Plaintiff's addition of the phrase "*unmodified standard protocol*," as used in those claims, was not supported by the specification.  (*Id.* at 44-45.)

48.     However, the Examiner suggested an amendment to the claims that would differentiate the claimed invention from Kang and overcome the written description rejection. (Ex. at 45.)

14

49.     As with the '823 Patent, the Examiner discussed Figure 2g and the specification's description of Figure 2g with reference to "send/receive driver communications software."   (*Id.* at 44.)

50.     The Examiner again found that the specification "teaches the send/receive driver communications software as being 'any available' or 'generic,' as opposed to 'unmodified standard protocol.'  *See* Illustration 9 below.  (*Id.* at 45.)

**Illustration 9:  Excerpt of Office Action**

Accordingly, the specification of the '423 patent teaches the send/receive driver communications software as being "any available" or "generic," as opposed to "unmodified standard protocol."

51.     Accordingly, the Examiner stated that claims 1–6 would be allowable if amended to indicate that the send/receive driver communications software is "*generic*" rather than "unmodified standard protocol" or if "otherwise amended to overcome" the written description rejection of § 112 "and to patentably distinguish the claims" from the prior art, including Kang. (*Id.* at 45.)

52.     Plaintiff accordingly amended claims 1–6 to replace the term "unmodified standard protocol" with the term "*generic*" as suggested by the Examiner.  (*Id.* at 49-52, February 21, 2012, Amendment.)

53.     The PTO issued a reexamination certificate for the '423 Patent on May 1, 2012.

### 3.     '574 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art

54.     Reexamination proceedings for the '574 Patent began after issuance of the reexamination certificates for the '811 and '423 Patents.

55.     During reexamination of the '574 Patent, the Examiner initially rejected all of the original claims (claims 1–8) over the prior art.  (Haugh Dec., Ex. G at 15-19, April 29, 2013, Office Action.)

56.     All of the Examiner's rejections again identified Kang as the primary prior art reference.  (*Id.*)

57.     In response to the rejections, Plaintiff amended every claim of the '574 Patent so that the term "*generic*" preceded the limitation "send/receive driver communications software" (or analogous limitation).  (*Id.* at 27-29, July 26, 2013, Amendment.)

58.     Plaintiff argued that the addition of the term "*generic*" differentiated the claimed invention from Kang.  (*Id.*)

59.     The Examiner again rejected the claims, noting it was unclear what Plaintiff meant by "*generic*" send/receive driver communications software.  (*Id.* at 43-48, October 29, 2013, Office Action.)

60.     In response to the rejections, the Examiner and Plaintiff scheduled an interview to discuss the rejections, including Plaintiff's amendment of the claims to add the term "*generic*."

61.     Before the interview, Plaintiff circulated an "Agenda" to the Examiner.  (*Id.* at 64-66, December 24, 2013, Interview Summary including Agenda.)  In the Agenda, Plaintiff argued that the Examiner's interpretation of "*generic* send/receive driver communications software packages" was improper because the "claims would read on all send/receive driver communications software packages without any weight being applied to the term "*generic*," *effectively eliminating the term from the claims*."  *See* Illustration 10 below.  (*Id.* at 66.)

16

**Figure 10:  Excerpt of Plaintiff's "Agenda" for Interview**

III.    **The Examiner's Analysis Using the Primary Definition Ignores the Recitation of the Term "generic"**

The unreasonably broad interpretation set forth by the Examiners includes all "send/receive driver communication software," whether such software pertains to or describes an entire group or class or not.  Likewise, "any available send/receive driver communications software package" includes both GENERAL and specific (i.e., not general) software, as the Examiners indicate it includes proprietary software.  **Such an interpretation is improper as the claims would read on all send/receive driver communications software packages without any weight being applied to the term "generic," effectively eliminating the term from the claims.**

62.    Plaintiff also argued in the Agenda that "an appropriate interpretation of the term 'generic send/receive driver communication software' would preclude proprietary software, *such as that disclosed in the prior art references*."  (*Id.* at 66.)

63.    After the interview, Plaintiff filed a written response to the Examiner's rejections.  (*Id.* at 67-78, December 30, 2013, Response to Office Action.)  Plaintiff reiterated that the addition of the term "*generic*" to the send/receive driver communications software differentiated the claimed invention from the prior art.  (*Id.* at 71-77.)

64.    The Examiner accepted Plaintiff's written argument.  (*Id.* at 88-89.)

65.    The PTO issued a reexamination certificate for the '574 Patent on March 17, 2014.

### 4.    '915 Reexamination Proceeding:  Plaintiff's Addition of the Term "*Generic*" to Distinguish the Claimed Invention from the Prior Art

66.    Reexamination of the '915 Patent proceeded in parallel with reexamination of the '423 Patent, following a similar sequence of events as discussed in Section IV.B.2. above.  However, for the sake of completeness, the reexamination proceeding for the '915 Patent is set forth in the following paragraphs.

67.     During reexamination of the '915 Patent, the Examiner initially rejected all of the original claims (claims 1–15) over the prior art.  (Haugh Decl., Ex. H at 19-24, April 24, 2013, Office Action.)

68.     All of the Examiner's rejections again identified Kang as the primary prior art reference.  (*Id.*)

69.     In response to the rejections, Plaintiff cancelled claims 5 and 13 and amended every remaining claim by adding a limitation that required the "send/receive driver communications software" be "*generic*."  (*Id.* at 32-34, July 24, 2013, Amendment.) Specifically, Plaintiff amended the claims to add the limitation shown in Illustration 11 below (highlighting added).

**Illustration 11:  Excerpt of Plaintiff's Amendment**

> wherein the receiving the instruction at the digital serial communications port from the computer further comprises receiving the instruction from generic send/receive driver communications software.

70.     Plaintiff argued that "no proper combination of the references teaches the subject matter of claims 1 and 9, *as amended*, as none of the references alone or properly combined teaches using '*generic'* send/receive driver communications software."  (*Id.* at 37-39, July 24, 2013, Amendment.)

71.     As with the '574 Patent, the Examiner again rejected the claims.  (*Id.* at 139-148, October 31, 2013, Office Action.)

72.     Following an interview with the Examiner, Plaintiff filed a response without any further claim amendments.  Instead, Plaintiff argued why its amendments overcame the Examiner's rejections.  For example, Plaintiff argued that the "software taught by the prior art . .

18

. applied by the Examiner would not be understood to be '*generic* send/receive driver communications software,' . . . ." (*Id.* at 165-177, December 31, 2013, Response).

73.     The Examiner accepted Plaintiff's written argument.  (*Id.* at 197-199.)

74.     The PTO issued a reexamination certificate for the '915 Patent on March 21, 2014.  (Ex. D.)

## V.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment has the initial burden of demonstrating "the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact."  *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Once the moving party has satisfied its burden, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue for trial." *Id.*

"The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts;" "[i]t must present significant probative evidence in support of its opposition . . . to defeat the motion for summary judgment."  *Id.*  Accordingly, "'[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

## VI.   A PATENTEE'S RECOVERY IS LIMITED UNDER 35 U.S.C. §§ 252 ¶¶ 1, 2 WHEN IT SUBSTANTIVELY AMENDS PATENT CLAIMS DURING REEXAMINATION

Section 252 addresses the effect of a patent that emerges from reexamination.[6]  Stated simply:

(1) The first paragraph of § 252 prevents a patentee from recovering infringement damages for the time period before issuance of the reexamined patent if the reexamined claims are not "substantially identical with the original patent."

(2) The second paragraph, first sentence, of § 252 (sometimes referred to as "absolute" intervening rights) allows a defendant to continue certain activities after issuance of the reexamined claim with respect to "specific thing[s]" that existed before issuance of the reexamined claim unless the reexamined claim was also "in the original patent."

(3) The second paragraph, second sentence, of § 252 (sometimes referred to as "equitable" intervening rights) allows a defendant to continue certain activities after issuance of the reexamined claim of which "substantial preparation" was made before issuance of the reexamined patent "to the extent and under terms as the court deems equitable."

This Motion is directed to (1) and (2) above, each of which is discussed in the following two sections.[7]

---

[6] Although § 252 references "reissued patents," it is made applicable to reexamined patents by § 307(b).

[7] Lexmark's Motion is not directed to (3), *i.e.*, § 252 ¶ 2, second sentence.  Lexmark has reserved its right to assert equitable intervening rights separately at a later stage of the litigation.  (ECF No. 63 in 2:12-cv-06799, E.D. Pa.)

**A.    A Patentee's Potential Damages Are Limited Under § 252 ¶ 1 If the Reexamined Claims and the Original Claims are Not "Substantially Identical"**

The first paragraph of § 252 provides that a patentee is not entitled to recover infringement damages "for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and amended claims are not 'substantively identical.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1377–78 (Fed. Cir. 2017) (citing §§ 252, 307(b)); *see also* H.R. Rep. No. 1307, 96th Cong., 2d Sess. 8, reprinted in 1980 U. S. Code Cong. & Admin. News 6460, 6467 ("Thus, a person practicing a patented invention would not be considered an infringer for the period between issuance of an invalid patent and its conversion through reexamination to a valid patent.").

To determine whether the claims are substantively identical, "the relevant inquiry is whether the scope of the amended claims is actually identical to the scope of the original claims based on normal claim construction analysis." *Presidio*, 875 F.3d at 1378; *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346–47 (Fed. Cir. 1998) ("in determining whether substantive changes have been made, we must discern whether the *scope* of the claims are identical") (emphasis in original).  And whether an amended claim is "narrower in scope" looks to "'whether there is any product or process that would infringe the original claim, but not infringe the amended claim." *Id.*  The patentee's intent in making the amendment "is not determinative or controlling in determining claim scope." *Presidio*, 875 F.3d at 1378 (quoting *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1350 (Fed. Cir. 2015)).

The Federal Circuit's *Laitram* decision is instructive.  There, the patentee added a limitation during reexamination of printing *only* "type quality" alphanumeric characters (as

21

opposed to the original claim which allowed "*any* quality of alphanumeric characters").

*Laitram*, 163 F.3d at 1344, 1348 (emphasis in original).  The patentee added this limitation to

distinguish the claims from the prior art and gain allowance.  *Id.* at 1348.  The Federal Circuit

found that the addition of the "type quality" limitation was a substantive change:

> [A] plain reading of the claims would indicate that the original and
> reexamined claims are of different scope: the original claims
> appear to cover a printer or method of printing which generates
> *any quality* of alphanumeric characters, while the amended claims
> seem to cover *only* a printing apparatus or method of printing
> which generates "type quality" alphanumeric characters.  Most
> significantly, however, the addition of the "type quality"
> limitation, along with the other amendments, *resulted in the*
> *allowance of claims that had been rejected in the reexamination*
> *proceeding over prior art; this is a highly influential piece of*
> *prosecution history.*  Although it is difficult to conceive of many
> situations in which the scope of a rejected claim that became
> allowable when amended is not substantively changed by the
> amendment, we arrive at our conclusion, not through any "per
> se rule," but in light of an overall examination of the written
> description, the prosecution history and the language of the
> respective claims.

*Id.* (emphasis added, citations omitted)

The Federal Circuit in *Laitram* further explained that the patentee's argument to the

contrary "requires a highly strained and incorrect construction of the claims:"

> The language of the claims indicates that "type quality
> alphanumeric characters" are simply a species of the genus
> "alphanumeric characters," and nothing in the written description
> persuades us otherwise. [The patentee's] argument is just an
> invitation for us to read a limitation into the original claims that is
> simply not there.

*Id.* (emphasis added, citations omitted).

22

**B.    A Defendant May Continue Certain Activities Under § 252 ¶ 2 If the Reexamined Claim Was Not "In the Original Patent"**

Once a determination is made that the reexamined claims are not "substantially identical" under § 252 ¶ 1, the defense of "absolute" intervening rights arises.  This defense is found in the second paragraph, first sentence, of § 252, and serves as an additional limitation on a patentee's potential recovery by allowing the defendant to continue certain activities that might otherwise infringe the reexamined claims if those claims were not in the original patent; specifically:

> A reissued patent shall not abridge or affect the right of any person . . . who, prior to the grant of a reissue, made, purchased, offered to sell, or used within the United States, or imported into the United States, anything patented by the reissued patent, *to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported* unless the making, using, offering for sale, or selling of such thing infringes a valid claim of the reissued patent which was in the original patent.

§ 252 ¶ 1, first sentence (emphasis added); *see also Sonos, Inc. v. D & M Holdings Inc.*, No. 14-1330, 2017 WL 6065126, at *2 (D. Del. Dec. 7, 2017) (Judge Bryson of the Federal Circuit, sitting by designation, "if the claims of the reexamined patent have been changed in substance from the original claims, [the defendant] satisfies that prerequisite for entitlement to intervening rights").

**VII.    PLAINTIFF'S SUBSTANTIVE AMENDMENTS TO THE ASSERTED CLAIMS DURING REEXAMINATION LIMIT ITS POTENTIAL RECOVERY IN THIS CASE**

Because Plaintiff substantively amended every asserted claim during reexamination, it cannot recover damages for the time period before issuance of the reexamined claims under §

252 ¶ 1, and Lexmark is entitled to continue certain activities that would otherwise allegedly
infringe after issuance of the reexamined claims under § 252 ¶ 2 (first sentence).[8]

### A.    Plaintiff Substantively Amended the Asserted Claims During Reexamination Proceedings to Narrow the Claims to Overcome the Prior Art

The situation presented here is nearly identical to the situation in *Laitram*.  Plaintiff
added a limitation to each of the asserted claims to overcome prior art at issue in the
reexamination.  Like *Laitram*, a "plain reading of the claims [] indicate[s] that the original and
reexamined claims are of different scope."  *Laitram*, 163 F.3d at 1348.  While the Patents'
original claims allowed for *any* "send/receive driver communications software" and *any*
"protocol for shifting the personal computer," the amended claims are limited to *only* "*generic*
send/receive driver communications software" and *only* an "*unmodified standard protocol* for
shifting the personal computer."  *See Laitram*, 163 F.3d at 1348 ("the original claims appear to
cover a printer or method of printing which generates *any* quality of alphanumeric characters,
while the amended claims seem to cover *only* a printing apparatus or method of printing which
generates 'type quality' alphanumeric characters" (emphasis added)).

This accords with the Federal Circuit's claim construction principles.  The words of a
claim "'are generally given their ordinary and customary meaning'" as construed in light of the
specification and prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir.
2005) (internal citations omitted); *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024
(Fed. Cir. 2015).  To that end, the prosecution history of a patent "can often inform the meaning
of the claim language by demonstrating how the inventor [here, Plaintiff] understood the

--------

[8] Lexmark denies infringement, denies the validity of the asserted claims, and denies that
Plaintiff is entitled to any of the relief sought.  (*See* ECF No. 21, Lexmark's Answer, Affirmative
Defenses, and Counterclaims.)  However, for purposes of this Motion, Lexmark is accepting that
Plaintiff somehow succeeds in proving alleged infringement.

invention and whether the inventor [Plaintiff] limited the invention in the course of prosecution, making the claim scope narrower that it would otherwise be."  *Phillips*, 415 F.3d at 1317. Indeed, as the Federal Circuit explained in *Laitram*, amending claims to overcome a prior art rejection during reexamination is a "highly influential piece of prosecution history" and it is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment."  163 F.3d at 1348. Importantly, "the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law."  *Id.* at 1347.[9]

### 1. Plaintiff's Addition of the Term "*Generic*" Substantively Narrowed the "Send/Receive Driver Communications Software" Limitation

Plaintiff amended the first group of patent claims to add the term "*generic*" before the term "send/receive driver communications software."  (Section IV, Lexmark's Statement of Undisputed Facts ("SUF") ¶ 15.)  Plaintiff's amendment substantively narrowed the scope of the claims as shown in the table below.  This is confirmed by the intrinsic evidence, including the claim language itself, the Patents' specification, and the reexamination proceedings.

| Claims | Claim Limitation | Construed |
|---|---|---|
| **Original Claims** | "send/receive driver communications software" | *any* send/receive driver communications software |
| **Amended Claims** | "*generic* send/receive driver communications software" | *only* 'generic' send/receive driver communications software |

First, the claim language of the original claims did not expressly limit the "send/receive driver communications software" limitation to a particular type of software; instead, the

---

[9] The Supreme Court has recognized that claim construction may involve underlying factual disputes.  *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015).  Here, however, there is no genuine dispute as to the facts.  *See* Section IV.

language simply claimed "send/receive driver communications software." (SUF ¶ 15.) Any attempt by Plaintiff to limit this plain language to a specific type of software is "an invitation for [the Court] to read a limitation into the original claims that is simply not there." *Laitram*, 163 F.3d at 1348.

Second, the Patents' specification likewise did not expressly limit the "send/receive driver communications software" to a particular type; indeed, the specification provided multiple embodiments of the "present invention." (SUF ¶¶ 1, 5.) To that end, the specification expressly states: "*Any available* send/receive communications software package is acceptable." (SUF ¶ 8.) Although one of the multiple embodiments discloses that the "send/receive driver communications software" may be "*generic*," nowhere does the specification demand that it be generic. (SUF ¶ 9.) In fact, the word "generic" does not appear anywhere in the Patents' written description. (SUF ¶¶ 10, 11.)

And, as the Federal Circuit has explained repeatedly, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *See, e.g.*, *Liebel-Flarsheim Co v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) (citing cases). Here, there is no clear indication that the original claims were intended to be limited to *only* "*generic* send/receive driver communications software."

Third, the fact that the original claims were not limited to *only* "*generic* send/receive driver communications software" is confirmed by the file history for the reexamination proceedings. Specifically, Plaintiff narrowed the claim to *only* "*generic* send/receive driver communication software" only after the Examiner rejected the claims. Plaintiff did so to differentiate the claimed invention from the prior art (which used a different type of

"send/receive driver communication software") to gain allowance of the claims.  (SUF ¶¶ 18–20, 27–39 ('811 Patent); 40–43, 48–53 ('423 Patent); 54–66 ('574 Patent); 67–74 ('915 Patent).)

Tellingly, Plaintiff at one point successfully argued that the Examiner's interpretation of "*generic* send/receive driver communication software," as amended by Plaintiff, was "improper" because the Examiner's interpretation "would read on *all* send/receive driver communications software packages without any weight being applied to the term '*generic*,' *effectively eliminating the term from the claims*."  (SUF ¶¶ 61–64 (emphasis added).)  Plaintiff likewise argued that an "appropriate interpretation of the term '*generic* send/receive driver communication software' would preclude proprietary software, *such as that disclosed in the prior art references*."  (SUF ¶¶ 62, 63 (emphasis added).)  In other words, even Plaintiff acknowledged that the addition of the term "*generic*" narrowed the scope of the send/receive driver communications software to a specific type.

In view of the foregoing, the asserted claims are substantively changed, thereby limiting Plaintiff's recovery as discussed in Section VII.B.  *See Laitram*, 163 F.3d at 1348 ("The language of the claims indicates that 'type quality alphanumeric characters' are simply a species of the genus 'alphanumeric characters,'" and nothing in the written description persuades us otherwise. [The patentee's] argument is just an invitation for us to read a limitation into the original claims that is simply not there.").

### 2.      Plaintiff's Addition of the Term "*Using an Unmodified Standard Protocol For*" Substantively Narrowed the "Shifting the Personal Computer" Limitation

Plaintiff amended the second group of patent claims to add the term "*using an unmodified standard protocol for*" before the previously existing term "shifting the personal computer to a connected mode."  (SUF ¶ 16.)  Plaintiff's amendment substantively narrowed the scope of the

27

claims as shown in the table below.  This is confirmed by the intrinsic evidence, including the claim language itself, the Patents' specification, and the prosecution history, including reexamination proceedings.

| Claims | Claim Limitation | Construed |
|---|---|---|
| **Original Claims** | "shifting the personal computer to a connected mode" | using *any* protocol for shifting the personal computer to a connected mode |
| **Amended Claims** | "*using an unmodified standard protocol for* shifting the personal computer to a connected mode" | using *only* an 'unmodified' standard protocol for shifting the personal computer to a connected mode |

First, the claim language of the original claims did not expressly limit the "shifting the personal computer to a connected mode" limitation to a particular protocol; instead, the language simply claimed "shifting the personal computer to a connected mode."  (SUF ¶ 16.)  Any attempt by Plaintiff to limit this plain language to a specific protocol is "an invitation for [the Court] to read a limitation into the original claims that is simply not there."  *Laitram*, 163 F.3d at 1348.

Second, the Patents' specification likewise does not demand "*using an unmodified standard protocol*;" in fact "unmodified standard protocol" does not appear anywhere in the written description.  (SUF ¶ 12.)  But even if Plaintiff could argue that the Patents somewhere disclose "using an unmodified standard protocol," that is not enough to overcome the plain language of the claims and the file history from the reexamination proceedings.  *See, e.g.*, *Liebel-Flarsheim*, 358 F.3d at 913 ("it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited").

Third, the fact that the original claim language did not specify a particular protocol for "shifting the personal computer to a connected mode" is confirmed by the file history for the

reexamination proceedings.  Specifically, Plaintiff narrowed the claims to using *only* an "*unmodified standard protocol for* shifting the personal computer to a connected mode" to differentiate the claimed invention from the prior art (which taught a "non-standard communications protocol and associated control codes that would not be capable of transmission or reception by 'unmodified standard protocol'. . . .") to gain allowance of the claims.  (SUF ¶¶ 18–20, 23–24, 26.)

In view of the foregoing, the asserted claims are substantively changed, thereby limiting Plaintiff's recovery as discussed in Section VII.B.  *See Laitram*, 163 F.3d at 1348.

**B.** **Because Plaintiff Substantively Amended the Asserted Claims, Plaintiff's Potential Recovery In this Case Is Limited**

**1.** **Plaintiff is Not Entitled to Damages for the Time Period Before Issuance of the Reexamined Claims Under § 252 ¶ 1**

Because none of the reexamined claims are substantially identical to the original claims, Plaintiff is not entitled, as a matter of law, to recover any damages for alleged infringement that occurred before issuance of the reexamination certificates for the Patents.  §§ 252 ¶ 1, 307(b); *Presidio*, 875 F.3d at 1377–78.  In other words, the PTO found all of the original claims of the Patents unpatentable, and, thus, Lexmark could not be liable for infringement of the original, unpatentable claims.  Accordingly, the earliest possible date the damages period for each Patent can begin is the date the PTO issued the reexamination certificate as set forth in the table below:

| Patent | Reexamination Certificate Issued |
|---|---|
| '811 Patent | July 31, 2012 |
| '423 Patent | May 1, 2012 |
| '574 Patent | March 17, 2014 |
| '915 Patent | March 21, 2014 |

(SUF ¶¶ 37, 53, 65, 74.)

29

**2.      Lexmark is Entitled to Continue Certain Activities After Issuance of the Reexamined Claims Under § 252 ¶ 2, First Sentence**

Because none of the reexamined claims are substantially identical to the original claims, Lexmark is entitled "to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific thing so made, purchased, offered for sale, used, or imported" before issuance of the reexamination certificate.  §§ 252 ¶ 1, first sentence, 307(b).  The statute's reference to "specific thing" is to any unit that was in existence before issuance of the reexamination certificates.  *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1221 (Fed. Cir. 1993).  For example, in *BIC Leisure*, the Federal Circuit held that absolute intervening rights applied to both the defendant's (1) products in inventory, and (2) products on order before issuance of the amended claims.  1 F.3d at 1222.

Here, Plaintiff seeks damages for the "accused devices made, sold, offered for sale, used, or imported into the United States."  (Haugh Decl., Ex. I at 4, Plaintiff's Initial Disclosures.)  However, Plaintiff is not entitled to damages for any products made, purchased, offered for sale, used, or imported before issuance of the Patents' reexamination certificates.

Notably, Plaintiff has previously argued before the Pennsylvania court that, because all of the asserted claims are directed to methods, and not an apparatus, this defense is not applicable.[10]  However, that argument ignores the fact that the Federal Circuit—the appellate court with exclusive jurisdiction over appeals of patent claims—has not distinguished between method and apparatus claims for the application of absolute intervening rights; instead, it has emphasized that the first sentence of § 252 ¶ 2 "provides an accused infringer with the *absolute right* to use or sell

---

[10]  This, notwithstanding the fact that Plaintiff is simultaneously seeking damages based on "accused devices."  (Haugh Dec., Ex. I at 4, Plaintiff's Initial Disclosures.)

a product that was made, used, or purchased before" the reexamination certificate issued.  *BIC Leisure Prods.*, 1 F.3d at 1220–21 (emphasis added); *see also Sonos*, 2017 WL 6065126, at *5 (Judge Bryson of the Federal Circuit, sitting by designation, stating:  "The statutory protection offered by absolute intervening rights does not depend on whether the claims at issue are apparatus or method claims.").

## VIII.   CONCLUSION:  THE COURT SHOULD GRANT SUMMARY JUDGMENT IN LEXMARK'S FAVOR

Because Plaintiff substantively amended every claim of the Patents during *ex parte* reexamination proceedings, Lexmark respectfully requests that the Court enter judgment that (1) Plaintiff is not entitled to damages for the time period before issuance of the Patents' reexamination certificates under § 252 ¶ 1, and (2) Lexmark is entitled to continue the use of, to offer to sell, or to sell to others to be used, offered for sale, or sold, the specific things made purchased, offered for sale, used, or imported before issuance of the reexamined claims under § 252 ¶ 2, first sentence.

Date:  April 13, 2018                                          Respectfully submitted,

                                                               By: /s/Steven B. Loy

                                                               Steven B. Loy
                                                               Dana R. Howard
                                                               STOLL KEENON OGDEN PLLC
                                                               300 West Vine Street, Suite 2100
                                                               Lexington, KY 40507
                                                               Telephone: (859) 231-3000
                                                               Facsimile: (859) 253-1093
                                                               steven.loy@skofirm.com
                                                               dana.howard@skofirm.com

31

Timothy C. Meece*
Jason S. Shull*
Audra C. Eidem Heinze*
Michael J. Harris*
Christopher Galfano*
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL  60606
Telephone:  (312) 715-1000
Facsimile:  (312) 715-1234
tmeece@bannerwitcoff.com
jshull@bannerwitcoff.com
AHeinze@bannerwitcoff.com
mharris@bannerwitcoff.com
cgalfano@bannerwitcoff.com

*denotes counsel who will seek pro hac vice admission*

**Attorneys for Lexmark International, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and the following have been served via U.S. Mail, postage prepaid:

Thomas S. Biemer
Edward F. Behm, Jr.
John J. Higson
Mark W. Halderman
Nicole N. Lai
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-7155

/s/Steven B. Loy
*Counsel for Lexmark International, Inc.*

32